**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

BEATA N., [1]

                **Plaintiff,**                       **Case No. 2:24-cv-10846**
                                                    **Magistrate Judge Cheryl L. Pollak**

        v.

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

                **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Beata N. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 28, 2021, and July 14, 2021, respectively, alleging that she had been disabled

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

since an alleged onset date of July 15, 2019. R. 93, 108–10, 218–25. Plaintiff's applications were denied initially on December 30, 2021, and upon reconsideration on February 23, 2022. R. 129–36, 144–49. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 150–51. ALJ Hilton Miller held a hearing on July 14, 2022, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 71–92. In a decision dated July 25, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2019, the alleged onset date through the date of that decision. R. 56–66. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 19, 2023. R. 42–47. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 23, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[3] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 18. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explained:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 43 years old on her alleged disability onset date. R. 65. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. R. 59. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 15, 2019, her alleged onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depression; bipolar disorder; anxiety disorder; ethanol ("ETOH") use disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 59–61.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional limitations subject to various non-exertional limitations. R. 61–65. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a production assembler. R. 64–65.

In the alternative, at step five, the ALJ found that a significant number of jobs existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC—*i.e.*, approximately 157,000 jobs as a laundry laborer; approximately 500,770 jobs as a cleaner, house keeping; and approximately 55,000 jobs as a garment folder. R. 65–66. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2019, her alleged onset date, and the date of the decision. R. 66.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law*, ECF No. 15 ("*Pl. Mem.*"); *Plaintiff's Reply Brief*, ECF No. 17 ("*Pl. Reply*"). The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 16 ("*D. Br.*").

IV.    **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

Melanie Callender, Ph.D. conducted an initial review of Plaintiff's medical record on behalf of the state agency on December 30, 2021. R. 94–107. According to Dr. Callender, the record documented the severe medically determinable impairments of depressive, bipolar and related disorders; personality disorders; and substance addiction disorders (alcohol). R. 96, 103. In conducting the psychiatric review technique and considering the paragraph B criteria of Listings 12.04 (addressing depressive, bipolar and related disorders) and 12.08 (addressing personality and impulse-control disorders), Dr. Callender found that Plaintiff was mildly limited in her ability to understand, remember, or apply information, and moderately limited in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage

8

herself. *Id*. In assessing Plaintiff's mental RFC, Dr Callender found, *inter alia*, that, as it specifically related to sustained concentration and persistence, Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods. R. 98 (further explaining in narrative form the sustained concentration and persistence capacities and/or limitations by responding "see below" and referring to a narrative explanation appearing on a later page of the opinion), 105 (same).

Under the heading "MRFC — Additional Explanation," Dr. Callender explained that "based on available evidence, the cl's [claimant's] limitations due to mental health conditions are moderate. In the absence of substance use/abuse and w/tx compliance, the *cl* [claimant] *is able to understand/execute simple instructions, sustain CPP* [concentration, persistence, and pace] *and relate/adapt to routine work-like settings*." R. 98–99 (emphasis added), 105–06 (same). Dr. Callender concluded that Plaintiff was not disabled. R. 100, 107.

Sharon Ames-Dennard, Ph.D. reviewed the record upon reconsideration for the state agency on February 23, 2022. R. 111–28. Dr. Ames-Dennard agreed with Dr. Callender that Plaintiff suffered from the severe medically determinable impairments of depressive, bipolar and related disorders; personality disorders; and substance addiction disorders (alcohol). R. 112, 121. When considering the paragraph B criteria of Listings 12.04 and 12.08, Dr. Ames-Dennard found that Plaintiff was mildly limited in her ability to understand, remember, or apply information and to adapt or manage herself, but moderately limited in her ability to interact with others and concentrate, persist, or maintain pace. R. 114, 122. As it specifically related to

9

sustained concentration and persistence, Dr. Ames-Dennard agreed with Dr. Callender that Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods. R. 115 (responding "see below" when asked to explain in narrative form the sustained concentration and persistence capacities and/or limitations), 124 (same).

Under the heading "MRFC — Additional Explanation," Dr. Ames-Dennard further explained that "[i]n the absence of substance use/abuse and w/tx compliance, the *cl is able to* understand/execute simple instructions, *sustain CPP* and relate/adapt to routine work-like settings." R. 117 (emphasis added), 126 (same). Dr. Ames-Dennard concluded that Plaintiff was not disabled. R. 118, 127.

## V.    DISCUSSION

Plaintiff argues that the RFC is flawed because the ALJ failed to incorporate in that determination his paragraph B finding that Plaintiff was moderately limited in concentration, persistence, or maintaining pace. *Pl. Mem.*, pp. 9–13; *Pl. Reply*, pp. 1–4. Plaintiff further contends that the ALJ also presented an incomplete hypothetical to the vocational expert, causing harmful error. *Id*. For the reasons that follow, the Court rejects Plaintiff's arguments.

A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not

10

treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain nonexertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, and repetitive tasks that can be explained; specifically (SVP 1-2) which involve making simple decisions, and only occasional changes in routine, and does not require work with the general public, and involves only occasional contact with coworkers and supervisors.

R. 61. In making this determination, the ALJ detailed years of record evidence that reflected, *inter alia*, that, while Plaintiff was psychiatrically hospitalized three times within a one-year period, those hospitalizations occurred during medication noncompliance and the evidence showed that her psychiatric condition greatly improved with appropriate treatment. R. 62–64. Specifically, the ALJ considered, *inter alia*, Plaintiff's testimony that while she had stopped taking her psychotropic medication in the past, she is now compliant with her medication and denied having any issues with alcohol. R. 62.

The ALJ noted that Plaintiff was psychiatrically hospitalized for two days in July 2019, after she was observed on video defacing property with anti-Semitic graffiti and exhibited bizarre behavior when police arrived at her home. *Id*. During that hospitalization, Plaintiff admitted she had been drinking alcohol; possible substance-induced mood disorder was noted. *Id*.

The ALJ also considered that when Plaintiff presented for a psychiatric intake appointment in November 2019, Plaintiff acknowledged that she had not taken her psychotropic medication for the last two months. *Id*. Despite such noncompliance, Plaintiff exhibited coherent thought process, age-appropriate computations, normal abstractions, intact thought association, moderate insight, fair judgment, full orientation, intact memory, intact attention/concentration, and intact knowledge. R. 62–63 (reflecting assessment of bipolar disorder, current episode manic without psych features, mild).

The ALJ acknowledged that Plaintiff was again psychiatrically hospitalized for 12 days in May 2020 due to worsening depressive and anxiety symptoms with concurrent aggressive behavior in the context of medication noncompliance. R. 63. Plaintiff's behavior improved with appropriate medication and she exhibited euthymic mood, normal thought process, normal thought content, fair judgment and moderate insight at discharge. *Id*.

The ALJ further noted that two months later when Plaintiff was questionably medication compliant, she was psychiatrically hospitalized a third time after spraying pepper spray in her mother's face and threatening to hang herself if her mother called anyone. *Id*. Plaintiff later admitted that she took her medication only when she felt "uncomfortable[.]" *Id*. Her condition improved with appropriate psychotropic medications and, at discharge, was calm, cooperative, and denied suicidal ideations. *Id*.

12

The ALJ observed that Plaintiff's mental health condition improved with medication compliance. *Id*. Treatment notes from March 2021 reflected that she remained stable on her medication dosages; she reported no sleep or appetite disturbance and no perceptual disturbances; and denied suicidal/homicidal ideations. *Id*. (reflecting Plaintiff was taking Zoloft, Seroquel, and Abilify). At her October 2021 follow up mental health appointment, Plaintiff denied any concerns regarding any decompensation symptomatology and denied suicidal/homicidal ideations. *Id.* (reflecting further that her mental health condition was being managed pharmacologically with Seroquel, Zoloft, and Wellbutrin).

The ALJ noted that a consultative psychological evaluation conducted in October 2021 revealed, among other things, that Plaintiff had full orientation, adequate social judgment, neutral mood, appropriate affect, loud and rapid speech, and intact memory and attention/concentration. *Id*. While she was a poor historian, Plaintiff related appropriately throughout the encounter with no evidence of thought disorder or psychotic symptoms. *Id.* She denied current suicidal ideation and did not appear to be a high risk of harm to herself in the imminent future. *Id*.

The ALJ also considered the opinions of the state agency psychological reviewing consultants, Dr. Callender and Dr. Ames-Dennard, finding those opinions persuasive because they were "grounded in the evidence of record, including careful consideration of the objective medical evidence and [Plaintiff's] allegations regarding symptoms and limitations" and "consistent with the evidence of record, which denote essentially normal mental status examinations without the need for psychiatric hospitalization when compliant with psychotropic medications[.]" R. 64.

In considering this record evidence, the ALJ noted that despite Plaintiff's three psychiatric hospitalizations in one year, each of those hospitalizations reflected that Plaintiff was

13

not compliant with her psychotropic medications at the time of admission, and that her condition vastly improved with appropriate treatment. R. 63. The ALJ further considered that Plaintiff has not required additional psychiatric hospitalization since July 2020, and she has remained compliant with her medications. R. 64. The ALJ therefore found that this evidence, combined with Plaintiff's testimony, "support a finding that she would be able to perform simple, routine, and repetitive tasks that involve making simple decisions; only occasional changes in routine; and requires only occasional contact with coworkers and supervisors and no contact with the general public." *Id.*; *see also id.* (noting further that Plaintiff "has impairments that cause significant limitations, but considering treating and examining source opinions, limitations are not of a severity to preclude ability to meet demands of basic work activities and not contrary to a finding the claimant has the residual functional capacity for work at the level assigned").

In the view of this Court, the ALJ's consideration of the record and his explanation provide substantial evidence to support the RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *cf. Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."); *Dearth v. Barnhart*, 34 F. App'x 874, at *875 (3d Cir. 2002) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.") (quoting *Gross v. Heckler*, 785 F.2d 1163, 1165–66 (4th Cir. 1986)).

14

Plaintiff, however, complains that the RFC does not reflect the moderate limitation in concentration, persistence, or maintaining pace that the ALJ found at step three[4] nor the state agency opined moderate limitations in this area. *Pl. Mem.*, pp. 10–12; *Pl. Reply*, p. 4. Plaintiff specifically argues that the ALJ "noted Plaintiff's assertion that 'she can pay attention for one hour at a time" and that "she cannot finish what she starts[,]'" but concluded that limiting Plaintiff to simple, routine, and repetitive tasks accounted for these limitations. *Pl. Mem.*, p. 11. Plaintiff highlights that the state agency reviewing psychological consultants found that she was moderately limited in her abilities to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods. She contends that the ALJ erred by failing to include such limitations in the RFC. *Id*. at 11–13 (citing R. 98, 114, 116); *see also Pl. Reply*, pp. 3–4

---

[4] At step three, when considering the paragraph B criteria of Listings 12.04 and 12.06, the ALJ found that Plaintiff was moderately limited in her ability to, *inter alia*, concentrate, persist or maintain pace:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant has asserted that she can pay attention for one hour at a time. She purports that she does not finish what she starts. However, she also indicated that she could follow spoken and written instructions (Exhibit 4E). During the July 2021 consultative psychological evaluation revealed that the claimant was able to count backwards from 100 by 3 offering 10 consecutive correct responses. She was able to recall five digits forward and five digits backward. She was presented with three basic arithmetic word problems and answered two of the three correctly. She was able to list the months of the years backwards without making an error. She was able to spell several five-letter words backwards correctly (Exhibit 2F). The fully developed record supports a finding that the claimant can perform simple, routine, and repetitive tasks.

R. 60.

15

(citing R. 98, 116). According to Plaintiff, the ALJ's RFC restriction to simple, routine, and repetitive tasks does not adequately account for her moderate limitations in concentration, persistence or maintain pace, particularly where the ALJ never explained how that restriction accommodates such limitations. *Pl. Mem.*, pp. 12–13 (citing, *inter alia*, *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3rd Cir. 2004)); *Pl. Reply*, pp. 2–4 (citing, *inter alia*, *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211–12 (3d Cir. 2019)). Plaintiff therefore urges this Court to remand this action for further proceedings. *Id.*

This Court disagrees that this matter requires remand. As an initial matter, to the extent Plaintiff suggests that the RFC is defective because the ALJ did not include specific limitations based on Plaintiff's subjective complaints identified at step three, Plaintiff is mistaken. *Pl. Mem.*, p. 11 (arguing that: "In finding a moderate limitation in these abilities [concentration, persistence or maintaining pace], the ALJ noted Plaintiff's assertion that 'she can pay attention for one hour at a time' and that 'she cannot finish what she starts.'") (citing R. 60); R. 60 (noting further that a consultative examination in July 2021 revealed Plaintiff was able to, *inter alia*, correctly perform several exercises involving spelling, recall, and mathematics). However, as Plaintiff concedes, she simply relies on her own subjective assertion that she can pay attention for only one hour at a time and "cannot finish what she starts." It is well established that the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective

16

statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted). Notably, the ALJ discounted Plaintiff's subjective complaints, R. 62–64, a determination that Plaintiff does not challenge. *See generally Pl. Mem.*; *Pl. Reply*.

Moreover, even though the ALJ addressed Plaintiff's subjective complaints in the step 3 analysis, paragraph B criteria findings at step three do not require any particular conclusions or restrictions in the RFC. *Cf. Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (explaining that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways" and, therefore, "the findings at steps two and three will not necessarily translate to the language used at steps four and five"). Accordingly, Plaintiff has not persuaded this Court that the ALJ erred by failing to include in the RFC specific limitations based on Plaintiff's subjective statements noted at step three that Plaintiff "can pay attention for one hour at a time" and "does not finish what she starts."

Next, Plaintiff's argument that the ALJ erred in failing to incorporate different or additional RFC functional limitations arising from the state agency opinions, *Pl. Mem.*, pp. 11–13; *Pl. Reply*, pp. 3–4, rests on a misunderstanding of the state agency consultants' opinions. Plaintiff confuses the worksheet portion of the state agency opinions (which contains questions related to a claimant's functional limitations and in which the moderate limitations Plaintiff highlights appeared), with the narrative portion of those opinions (which appeared under the heading "MRFC – Additional Explanation"). R. 98–99, 105–06, 115, 117, 124, 126. Notably, the worksheet is not the operative portion of those opinions; it is not the RFC assessment. *See Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010) ("'Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of

17

documentation and *does not constitute the RFC assessment*.'") (emphasis in the original) (quoting POMS DI 24510.060, *available at*

https://secure.ssa.gov/apps10/porns.nsf/lnx/0424510060).

Indeed, the state agency opinions highlight that while the short answers to the questions in those opinions "help determine the individual's ability to perform sustained work activities[,]" the "actual" mental RFC is found in the narrative discussion portion of the opinions:

> The questions below help determine the individual's ability to perform sustained work activities. *However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion*. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

R. 97 (emphasis added); 104 (same), 115–16 (same), 124–25 (same); *see also Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("But we have said that ALJs are not required to give any weight to these fill-in-the-blank and checklist portions of RFC assessments and that their focus instead should be on the narrative portions of the assessments where the medical experts expound on their opinions.") (citations omitted). The ALJ therefore had no obligation to include in the RFC any additional limitations identified in the worksheet portion that did not ultimately appear in the actual MRFC found in the narrative section. *Id*.

Dr. Callendar found moderate limitations at the initial level of review in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods. When asked to explain in narrative form the limitations in concentration and persistence,

and in adaptation, Dr. Callender expressly referenced her narrative discussion under the heading, "MRFC – Additional Explanation." R. 98 (referring to "see below" when asked to explain in narrative form the limitations in concentration and persistence and in adaptation), 105 (same). In that narrative explanation, as detailed above, Dr. Callender found that, "[i]n the absence of substance use/abuse and w/tx compliance, the cl [Plaintiff] is *able to understand/execute simple instructions, sustain CPP and relate/adapt to routine work-like settings*." R. 98–99 (emphasis added); *see also* R. 105–06 (same).

On reconsideration, Dr. Ames-Dennard similarly explained and qualified the moderate limitations she found in concentration, persistence, or maintaining pace—*i.e.*, moderate limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods. When this consultant was asked to explain in narrative form these limitations: she responded that Plaintiff was "DEEMED CAPABLE OF ATTENDING / CONC / PERSISTING DURING THE COMPLETION OF WORK RELATED TASKS." R. 115–17 (capitalization in the original), 124–26 (same). Additionally, in her narrative discussion under the heading, "MRFC – Additional Explanation," Dr. Ames-Dennard similarly explained that, "[i]n the absence of substance use/abuse and w/tx compliance, the cl is able to understand/execute simple instructions, sustain CPP and relate/adapt to routine work-like settings." R. 117; *see also* R. 126 (same).

Stated differently, Drs. Callender and Ames-Dennard detailed and explained in their narrative discussions the parameters of Plaintiff's mental functional limitations. The ALJ

19

accommodated these limitations by restricting Plaintiff to, *inter alia*, the performance of only "simple, routine, and repetitive tasks that can be explained; specifically (SVP 1-2) which involve making simple decisions, and only occasional changes in routine[.]" R. 61; *cf. Hess*, 931 F.3d at 210 ("A limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (citations omitted); *Menkes*, 262 F. App'x at 412–13.

While Plaintiff nevertheless insists that these RFC limitations do not adequately accommodate her moderate limitations in concentration, persistence, or maintaining pace and argues that the ALJ did not sufficiently explain such limitations under *Hess* and in light of *Ramirez*, *Pl. Mem.*, pp. 12–13; *Pl. Reply*, pp. 2–4, this Court finds *Ramirez* does not require remand because in the instant case the ALJ gave an explanation sufficient under *Hess*.

In *Ramirez*, the Third Circuit found that the ALJ's RFC restriction to, among other things, "one to two step tasks" was not sufficient where the claimant was found to "'often' has deficiencies in concentration, persistence or pace.'" *Ramirez*, 372 F3d at 554. The Third Circuit explained that such limitation was inadequate because it did not account for deficiencies in pace: "Many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id*. Accordingly, the Court concluded that substantial evidence did not support the ALJ's decision because the simple tasks limitation did not "adequately convey" the claimant's limitations of pace. *Id*. at 552 n.2, 554–55.

In *Hess*, the Third Circuit considered whether the ALJ's limitation of Hess "to jobs requiring understanding, remembering, and carrying out only simple instructions making only simple, work-related decisions" was sufficient where the ALJ found at step three moderate

difficulties in concentration, persistence or pace. *Hess*, 931 F.3d at 208–09. As previously noted, the Third Circuit instructed that an ALJ need not incorporate specific limitations in the RFC regarding a claimant's moderate limitations in one of the broad functional areas. *Hess*, 931 F.3d at 209. *Hess* further instructed that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Id.* at 211 (explaining that this conclusion "flows directly from our decision in *Ramirez*").

In the present case, the ALJ's decision offers a "valid explanation" for the finding that a limitation to "simple, routine, and repetitive tasks that can be explained" adequately accommodates a moderate limitation in concentration, persistence, or pace. As detailed above, the ALJ expressly considered, *inter alia*, behavior improvement with appropriate medication, including normal thought process, normal thought content, and fair judgment, with no suicidal or homicidal ideations or psychiatric hospitalization. R. 63–64. Conversely, Plaintiff demonstrated generally worsening behaviors—to the point of psychiatric hospitalizations—when she was not compliant psychotropic medication. *Id*. In that respect, the ALJ specifically noted that Plaintiff had not required additional psychiatric hospitalization since July 2020, and she has remained compliant with her medication. R. 64. The ALJ also explained that the state agency opinions supported a finding that Plaintiff was not disabled. *Id.* The ALJ therefore concluded that the medical evidence, combined with Plaintiff's testimony, "support a finding that she would be able to perform simple, routine, and repetitive tasks that involve making simple decisions; only occasional changes in routine[.]" *Id*. (further finding that Plaintiff "requires only occasional contact with coworkers and supervisors and no contact with the general public"). The ALJ therefore provided a "valid explanation" under *Hess*. *See Hess*, 931 F.3d at 214 (finding that

ALJ's explanation was sufficient where the ALJ "highlighted, among other things, the following: mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of 'simple tasks'"); *Menkes*, 262 F. App'x at 412–13; *Gerenza v. Bisignano*, No. 1:24-CV-00154, 2026 WL 27577, at *4 (M.D. Pa. Jan. 5, 2026) (finding that the ALJ's explanation under *Hess* was valid where the ALJ, after reviewing "all the evidence of record, including the claimant's history of inpatient hospitalizations and subsequent improvement with medication management, and the generally consistent and normal findings from outpatient mental status examinations," concluded that the claimant, who had moderate limitations in concentration, persistence, or maintaining pace, could "perform unskilled work" within the RFC limitation of "understand[ing], retain[ing], and carry[ing] out simple instructions").

Finally, Plaintiff complains that the ALJ failed to incorporate in the hypothetical to the vocational expert all Plaintiff's limitations, including limitations in concentration, persistence, or maintaining pace. *Pl. Mem.*, pp. 12–13 (citations omitted). This argument is unavailing. The ALJ posed a hypothetical question to the vocational expert that assumed a claimant with Plaintiff's vocational profile with the RFC found by the ALJ. R. 61, 88–89. The vocational expert responded that the jobs of laundry laborer, housekeeping cleaner, and garment folder would be appropriate for such an individual, R. 89–90; *see also* R. 65–66 (reflecting the ALJ's reliance upon this vocational expert's testimony at step five when finding, in the alternative, that Plaintiff was capable of performing other work in significant numbers in the national economy). In criticizing the hypothetical question for not addressing her moderate limitations in concentration, persistence, or maintaining pace, Plaintiff is essentially attacking the RFC determination itself.

22

*See Rutherford*, 399 F.3d at 554 n.8. Since this Court has already rejected Plaintiff's challenge to the RFC for the reasons discussed above, the Court finds this argument on the hypothetical to be without merit.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:   May 27, 2026                                          *s/Cheryl L. Pollak*
                                                              CHERYL L. POLLAK
                                                              UNITED STATES MAGISTRATE JUDGE